

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. Clinton Owsley, Director
Gas Utilities Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-584

Re: Interpretation of various
situations arising under
House Bill 792, Acts of the
46th Legislature, 1939, ap-
pertaining to the liquefied
petroleum gas industry in
Texas.

We have your letter of November 6, 1939, setting
forth six distinct situations in respect to which you ask
our opinion regarding the extent of your jurisdiction in
various matters.

(1) It is our opinion that you may require of
Kerrville, Menard, Marfa and Spur licenses and statutory
bond under the provisions of House Bill 792, Acts of the
46th Legislature. It is fundamental that municipalities,
though public corporations when engaged in enterprises of
the character of a private enterprise, are subject to
suit and liabilities ordinarily appertaining to private
corporations or individuals. Section 2b (1) requires
that "No person, firm or corporation shall, after the
effective date of this Act, engage in this State in the
manufacture and/or assembly, sale or installation of any
apparatus to be used in this State for the storage and/or
dispensing of liquefied petroleum gas . . . ."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

The statute not only makes no distinction between private and public corporations, but section 3 of the Act specifically includes "municipal" corporations. Where public corporations under the general law are in pursuit of proprietary, rather than governmental, enterprises, they are subject to the liabilities of private enterprises in such instances. It is our opinion that they should be required to take out licenses, inasmuch as the operation of a butane gas system is not governmental in nature. City of Ysleta v. Babbitt, 28 S. W. 702; City of Wichita Falls v. Lipscomb, 50 S. W. (2d) 867; error refused; City of Amarillo v. Green, 267 S. W. 702 (Tex. Com. App.)

(2) In response to your second question, we are of the opinion that all plumbers, though having plumbers' licenses, who are engaged in the installation of liquefied petroleum gas storage and dispensing systems and gas piping for liquefied petroleum gas dealers, must obtain a license pursuant to Section 2b (1) of House Bill 792. Said section of the Act provides that "no person . . . shall, after the effective date of this Act, engage in this State in the manufacture and/or assembly, sale or installation of any apparatus to be used in this State for the storage and/or dispensing of liquefied petroleum gas or to be used for any of the purposes enumerated in Section 2a hereof, or engage in the handling and/or transportation of liquefied petroleum gas over the highways . . . without having first obtained from the Railroad Commission of Texas, under the provisions of this Act a license so to do."

(3) It is our opinion that persons of foreign states purchasing liquefied petroleum gas from refineries in Texas, and engaged in the transportation over Texas highways of equipment and liquefied petroleum gas from Texas refineries, though strictly in interstate commerce, marked under the provisions of the law, should obtain a license. Undoubtedly, the provisions of Section 2b (1) are sufficiently broad to cover persons thus engaged. The only question is whether or not the State of Texas has jurisdiction to make such requirement of persons engaged in interstate commerce by reason of the possible infringement upon federal jurisdiction under the commerce clause of the federal constitution.

In the absence of the federal government having assumed jurisdiction over such matters, it is our opinion that a state may impose all reasonable and non-discriminatory regulations upon such commerce as may be necessary or wise in pursuance of the police powers of this state. The Supreme Court of the United States, in the case of Sligh v. Kirkwood, 237 U. S. 52, has held that there may be legitimate action by the state in the matter of local police regulation over interstate commerce, which the state may take, until Congress exercises its exclusive and supreme authority upon the subject. The same court in the case of Texas Company v. Brown, 258 U. S. 466, held that a state is within its governmental powers in requiring inspection, including tests as to quality, as a safeguard with respect to inflammable substances, such as petroleum products, when found within its borders, or even when moving in commerce from state to state (there being no legislation by Congress upon the subject.) To the same effect is the case of Pure Oil Co. v. State of Minnesota, 248 U. S. 158, and the case of Savage v. Jones, 225 U. S. 501. Our search reveals no federal law pursuant to which Congress has undertaken the occupation of this field, and it is our understanding that in the administration of this Act, no asserted federal regulation has come to the attention of your division.

(4) The law does not purport to prescribe the number of establishments which may be operated by a person, firm or corporation under a license to engage in a phase of the liquefied petroleum gas industry. The matter of the number of establishments for the conduct of such business is entirely discretionary with the licensee. Ex parte Butin, 28 Tex. App. 304, 13 S. W. 10. It may not appear to be desirable that this should be so; but the law must be enforced according to its terms, and interpretation and construction cannot be allowed to serve the function of legislation. Under the law as presently drawn, we are constrained to answer your fourth question that a license to engage in a phase of the liquefied petroleum gas industry will serve as authority for the conduct of such phase of the business in as many places or establishments

as he, they or it may desire. However, a license to engage in only one phase of the business will not serve as authority to conduct a separate and distinct phase, even at the same establishment. The act seems, in sections 2b (1), (2) and (3), to contemplate the separate licensing of distinct phases of the industry, such as manufacturing of equipment on the one hand, and the transportation of the gas on the other. So a license to engage in the manufacture of equipment will not serve as authority for engaging in the transportation of the gas to be used in the equipment.

(5) Your fifth question presents a different situation from that presented in your fourth. A corporation may not operate under an assumed name. Article 1069, Penal Code. In our opinion, the conduct of the business of the J. & S. Carburetor Company, therefore, is not to be regarded as another establishment maintained by the Texas Mechanical Laboratories, Inc., and therefore authorized under the license issued to the corporation, but is to be regarded as a business conducted by the individual members and stockholders, as an association. We are therefore of the opinion that though the J. & S. Carburetor Company may be engaged in the same phase of the liquefied petroleum gas industry as the Texas Mechanical Laboratories, Inc., the license to engage in such phase of the business issued to the Texas Mechanical Laboratories, Inc., will not inure to the benefit of the J. & S. Carburetor Company.

(6) In response to your question No. 6, it is our belief that all refineries manufacturing liquefied petroleum gases are required by the statute to obtain a license and post bond. In connection with their operations in refining and selling the product to pipe line companies, they necessarily have certain equipment necessary for the purpose of loading the gas into gas trucks and delivering it into gas pipe lines. Undoubtedly, that portion of Section 2b (2) of House Bill 792, requiring licenses on the part of those engaged "in the business of transporting or _dispensing_ —liquefied petroleum gases and/or the sale and/or installation of any apparatus for the storage and/or dispensing of liquefied petroleum gas" covers their operations. They are engaged in dispensing liquefied petroleum gas. They are engaged in the sale of such

Honorable W. Clinton Owsley, page 5

gas and a risk incident to such operation is similar, if not identical, with those that are incident to the actual transportation of gas over highways. The word "dispensing" as used in the Act, independent of or in connection with the word "sale" undoubtedly includes the functions of delivering gas into a pipe line or of delivering gas into a truck tank or tank car.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Hugh Q. Buck
Assistant

APPROVED FEB 19, 1940

HQB:LW

FIRST ASSISTANT
ATTORNEY GENERAL

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE